### PALMER et al. v. JAGGAERS et ux. (No. 1520.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 10, 1915. Rehearing Denied Dec. 16, 1915.)

1. VENUE ⬥5—TRUST DEED—SUIT TO AVOID —INJUNCTION.

Where plaintiff sought to have a trust deed declared void as an attempt to create a lien on his homestead and prayed an injunction against the trustee to prevent a sale of the land to satisfy the debt secured, the action was properly brought in the county where the land lay under Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 14, laying the venue of suits involving title to lands in the county where the land lies, instead of being brought in the county of the residence of the trustee, or that of the beneficiary, under the requirement of Vernon's Sayles' Ann. Civ. St. 1914, art. 4653, that certain writs of injunction be brought in the county of defendant's domicile, since the injunctive relief sought was merely ancillary to the main purpose of avoiding the deed.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 4–11; Dec. Dig. ⬥5.]

2. HOMESTEAD ⬥216 — TRUST DEED — QUESTION FOR JURY.

In an action to set aside a trust deed securing a debt, evidence *held* to require submission to the jury of the issue as to whether land was a homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 400–403; Dec. Dig. ⬥216.]

Appeal from District Court, Franklin County; J. A. Ward, Judge.

Suit by J. M. Jaggaers and wife to restrain the sale of real estate by Ed I. Palmer as trustee under a trust deed to secure a debt owing to the North Texas Dry Goods Company, and to have the deed declared void. Cross-action by the Dry Goods Company for foreclosure of the trust deed. From judgment of foreclosure as to part of the land only, but granting plaintiffs the relief sought as to the remainder, defendants appeal. Reversed.

By a deed dated November 20, 1911, appellee J. M. Jaggaers conveyed 50 by 120 feet of land in the town of Winfield, Titus county, and 55 acres in Franklin county, to appellant Palmer, in trust to secure the payment of his (Jaggaers') promissory note for $2,458.39, dated said November 20, 1911, and payable January 1, 1912, to the order of appellant North Texas Dry Goods Company. This suit, commenced by Jaggaers, and prosecuted by him and his wife, who intervened and made herself a party plaintiff, was to enjoin a sale of the 55 acres, which Palmer

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as trustee was proceeding to make by virtue of the trust deed, and to have said trust deed declared to be "void and of no effect," on the ground that the land at the time the deed was made was a part of their homestead. By a plea filed in due order appellants alleged that a temporary writ of injunction, which, it seems, the court granted, "does not," quoting, "pertain to a suit in this court, but is a separate and independent action, and said writ has been improperly returned to this court, but should have been returned to either the district court of Lamar county, Tex., or the district court of Hopkins county, Tex., under the provisions of article 4653 of the Revised Civil Statutes of Texas of 1911"; further alleged the residence of Palmer to be in said Hopkins county, and that of the dry goods company in Lamar county, and, negativing the existence of facts which might entitle appellees to sue them in Franklin county, asserted a privilege they claimed to be sued in either Hopkins or Lamar county, and asked that the cause be transferred as provided by the statute to one or the other of those two counties. This plea was overruled, and the action of the court in overruling it is assigned as error. By a cross-action the dry goods company sought judgment against Jaggaers for the amount of the note and a foreclosure of the lien of the trust deed on the 55 acres of land and also on the lot in Winfield. The appeal is from a judgment (based on a verdict returned by the jury as directed by the court) granting appellees the relief they sought, and awarding the dry goods company a recovery against appellee J. M. Jaggaers for the amount of the note, and foreclosing the lien of the trust deed made to secure it so far as it was on the lot in Winfield.

A. P. Park, of Paris, R. B. Keasler, of Sulphur Springs, and H. L. Wilkinson and R. T. Wilkinson, both of Mt. Vernon, for appellants. T. C. Hutchings, of Mt. Pleasant, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] The trial court did not err when he overruled appellants' plea claiming a privilege to be sued in either Hopkins county, where Palmer resided, or in Lamar county, where the dry goods company resided. The main purpose of the suit was to obtain a decree declaring the trust deed of no effect because void as an attempt to create a lien on appellees' homestead. The relief sought in the prayer for the writ of injunction was ancillary merely to that purpose, and therefore the statute invoked (article 4653, Vernon's Statutes) did not apply to the suit. Royal Amusement Co. v. Columbia Piano Co., 170 S. W. 278; Parsons v. McKinney, 133 S. W. 1085. Its venue was, we think, controlled by the fourteenth subdivision of article 1830, Vernon's Statutes, as follows:

"Suits for the recovery of lands or damages thereto, suits to remove incumbrances upon the title to land, suits to quiet the title to land, and suits to * * * stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

[2] But we are of opinion it did not appear from the testimony as a matter of law that the 55 acres were a part of appellees' homestead at the time same were conveyed to Palmer, and therefore that the court erred when he peremptorily instructed the jury to find that the land was then homestead. Whether it was or not should have been submitted to them for determination.

At the time the trust deed to Palmer was made appellee J. M. Jaggaers was in the mercantile business in Winfield. He was then, and during the 18 years immediately preceding that time had been, living with his family on 128 acres he owned, situated in the country, about 1½ miles from Winfield. Before engaging in the mercantile business he had operated a meat market in Winfield, and had rented the 55 acres in controversy and used same as a pasture for cattle owned by him in connection with his meat market. He purchased the 55 acres about three years before he conveyed same to Palmer, and about the time he purchased same ceased to operate the meat market. The 55 acres were distant, "straight through" and over lands he did not own, about ½ of a mile, and by the traveled road about 2½ miles, from the 128 acres. He testified, and so did his wife, that he bought the 55 acres for a homestead, intending as soon as he "got a chance" to build a dwelling house on it and then move to and live on it; that when he bought same he "went to putting stock on there and hogs on there," and had his 18-year old boy to grow a crop of cotton on it; that one of his married sons lived on the land; that his said married son was sickly, and he "got him to live there and gave him a living out of it"; that the land was not fenced when he bought it, and he "had it all fenced and fixed up." He further testified that within a month or two after he made the trust deed he and his family moved to a house which was on the land at the time he bought it, and thereafterwards to the date of the trial (about three years) lived on and used it as their home. The testimony recited would, we think, have supported a finding by the jury that the land was homestead at the time the trust deed was made, had a question as to whether it was or not been submitted to them. But there was other testimony which, it seems to us, would have supported a contrary finding. The witness Palmer testified:

"I was sent to Winfield about the 18th or 19th of November, 1911, with the understanding to make some kind of settlement with Mr. Jaggaers, and he suggested that he had a piece of land. Mr. Jaggaers told me he had a piece of land that he would give us a deed of trust to. He said it would be impossible to pay the bill,

and if we would extend just a little time he would gladly give us this deed of trust for this tract of land, and I asked him if it was part of his homestead. He said it was not. He said, 'I bought it for one reason, for an investment; it was cheap and I use it in connection with my meat market. It is close to Winfield and I have to have a place to put my beef cattle;' and with that understanding he gave me the deed of trust. He told me his homestead was something like three or four miles from Winfield, and he told me there was something like 128 acres in it, and that they had been living on it for a number of years. He told me the 128 acres was about 2½ miles from this land. I had two conversations with him with reference to whether or not this was his homestead; the one I have just related was the first one, and it occurred at Winfield. That is the one in which he proposed to give me the deed of trust. The next conversation I had with him on the subject was at Sulphur Springs, Hopkins county. In that conversation I asked him again was it his homestead, and he said, no, it was not a part of his homestead. He told me again that his homestead was 2½ miles from this land involved. He said he did not use it in connection with his homestead or claim it as a part of his homestead. He said that he used it for grazing purposes for his beef cattle and also rented it out to individuals at Winfield for cattle at 50 cents a month. He said that this was largely grass land, that it was mostly bermuda, and was used for a pasture. In that connection he stated for what purposes he used it. He said he had had that land about three or four years. I did not know anything about the facts in reference to his land and his property. I did not know exactly where the 128 acres was; I knew somewhere in the neighborhood of where it was located. I knew personally the facts with reference to the location of the 55 acres. I knew that what he said about his home and where he lived was true. I believed his statements with reference to where his homestead was and with reference to his not claiming this 55 acres as any part of his homestead. I acted upon his statements in agreeing to take the deed of trust and extending the time of payment of his indebtedness to the North Texas Dry Goods Company. It was on the strength of his statement that I made this settlement with him."

The witness Keasler testified:

"I had occasion to write a deed of trust for Mr. Palmer signed by Mr. Jaggaers about November 20, 1911. I was at my office in Sulphur Springs. Those parties came up to my office. My recollection is that Mr. Palmer brought Mr. Jaggaers up into my office. It was the first time I had ever seen Mr. Jaggaers, and Mr. Palmer asked me to write a deed of trust for him. I prepared to do it, and the thought came into my mind that I ought to find out whether or not it was his homestead, and I asked him if it was his homestead. When I got ready to prepare and write the instrument I asked him if it was any part of his homestead, and he said, no, that he did not claim it as any part of his homestead at all, that his homestead was on another tract he had about 2½ miles distant from there. And during the course of the conversation he stated that he had lived on this other piece as his homestead for a number of years, and that he had not had this last tract a great while. The last tract, he stated, the tract of 55 acres, he had not had many years. He said he had bought it for use principally in his meat market business. He stated that he was in the mercantile business at Winfield and was running a meat market in connection with it, as I recollect now, and that he needed some land on which to put his stock. It was largely bermuda, he said, and good pasture. He said he had lived on the 128-acre tract a number of

years as his homestead, and at that time was claiming that as his homestead, and that this 55 acres formed no part of his homestead. He also stated that it was some 2½ miles from his home tract. I will not be positive as to whether or not Mr. Jaggaers at that time offered to make a deed to the land; I do not recall that positively."

It seems to us the use made by appellees of the land after they purchased it, and before it was conveyed to Palmer, as stated, was as consistent with the purpose for which the witnesses quoted testified J. M. Jaggaers told them he purchased it, as it was with the purpose for which appellees testified it was purchased, and that a finding that the land was or was not homestead would not have been without the support of testimony. Therefore it was, we think, error not to submit to the jury a question as to whether it was homestead or not.

The judgment will be reversed and the cause will be remanded to the court below for a new trial.